IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**MICHAEL JACKSON**                                                     **PLAINTIFF**
**ADC #122135**

v.                         **No: 4:16-cv-00093 SWW-PSH**

**CHARLES HOLLADAY,** *et al.*                              **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

#### I. Introduction

Plaintiff Michael Jackson filed a complaint pursuant to 42 U.S.C. § 1983 on February 22, 2016, against Pulaski County Sheriff Charles Holladay and Deputy Christopher Gipson (the "Defendants") in both their individual and official capacities. Doc. No. 2. Jackson was a convicted inmate during the time he was housed in the Pulaski County Detention Center ("PCRDF"). *Id.* at 3. Jackson alleges that on September 14, 2015, Gipson told him to take his break in an upstairs area. *Id.* at 4. Jackson informed Gipson that he had a lower level bunk medical restriction and

could not go upstairs. *Id.* Jackson claims that Gipson gave him a direct order to go upstairs. *Id.* Jackson fell on the stairs and was taken to the hospital in an ambulance and diagnosed with a concussion. *Id.* Jackson sues for injunctive and monetary relief.[1] *Id.* at 5.

The Defendants filed a motion for summary judgment, a brief in support, and a statement of facts asserting that they are entitled to summary judgment with respect to Jackson's claims (Doc. Nos. 45-47). Jackson filed a response, a brief in support, an affidavit, and a statement of disputed facts (Doc. Nos. 54-57). Jackson subsequently filed two affidavits (Doc. Nos. 63 & 64), and Defendants filed a reply (Doc. No. 65). For the reasons described herein, the undersigned recommends that that the Defendants' motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

---

[1] Because Jackson is no longer incarcerated at the PCRDF, his claims for injunctive relief are moot.

2

motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

The facts listed below are taken from those submitted by Defendants that are supported by documents attached to their statement of facts (Doc. No. 46) which include the Affidavit of Robin Ballard (the "Ballard Affidavit") and numerous exhibits (Doc. No. 46-1). Facts disputed by Jackson are also described.

1. Jackson was booked into the PCRDF on November 18, 2014. Doc. No. 46-1 at 1 (Ballard Affidavit); *id.* at 6 (Jackson's November 18, 2014 PCRDF Book-in Sheet).

2. During Jackson's intake screening on November 18, 2014, the intake nurse noted that Jackson had lower level/lower bunk paperwork from the Arkansas Department of Correction. *Id.* at 2 (Ballard Affidavit) & 20 (November 18, 2014 Intake Screening Form).

3. If an inmate has mobility issues, medical personnel may issue a medical communication form restricting the inmate to lower level/lower bunk. *Id.* at 2 (Ballard Affidavit).

4. On March 15, 2015, Jackson received a lower level/lower bunk restriction. *Id.* at 3 (Ballard Affidavit) & 23 (Jackson's Miscellaneous Booking Report).

5. A lower level/lower bunk restriction indicates that the inmate should only be housed on the lower level of his assigned unit and on the lower bunk of his cell. *Id.* at 2 (Ballard Affidavit).

6. Visitation booths at the PCRDF are located on the second floor of each unit. *Id.* at 3 (Ballard Affidavit).

7. If medical personnel issue a medical communication form stating that an inmate cannot go upstairs due to mobility impairment, officials will arrange an alternate accessible visitation area. *Id.* at 2 (Ballard Affidavit) & 17 (PCSO Branch Directive D10-0040).

8. On September 14, 2015, Jackson went upstairs in the U-Unit. Doc. No. 2 at 4.[2]

9. He alleges that before going upstairs he told Gipson that he had a lower level/lower bunk restriction and could not go upstairs. *Id.* The parties dispute whether Jackson elected to go upstairs or was ordered to go upstairs. Doc. No. 46 at 3; Doc. No. 57.

10. As Gipson escorted Jackson to his cell on the first floor of U-Unit from the second floor, Jackson slipped and fell down the last three stairs. Doc. No. 46-1 at 31 (Deputy Christopher Gipson's September 14, 2015 Incident Report).

11. Gipson immediately called a code red (medical emergency) and medical personnel reported to U-Unit and assessed Jackson. Doc. No. 46-1 at 31 (Gipson report).

12. Medical personnel decided that Jackson should be transported to the University of Arkansas for Medical Sciences ("UAMS") for further assessment. *Id.* at 31 (Gipson report) & 31 (September 14, 2015 PCRDF Emergency Room Referral).

---

[2] It is not clear whether Jackson went upstairs for a break as he alleged in his complaint or for visitation. In the grievance appeal attached to his complaint, Jackson complained that lower level/lower bunk restricted inmates were required to go upstairs for visitation which resulted in his fall on September 14, 2015. *See* Doc. No. 2 at 7.

4

13. A doctor at UAMS diagnosed Jackson with a closed head injury resulting in a concussion and back pain. *Id.* at 3 (Ballard Affidavit) & 39 (September 14, 2015 UAMS Discharge Instructions form).

14. Jackson filed a grievance regarding his September 14, 2015 fall. Doc. No. 2 at 6-7. The grievance officer responded:

> This matter is being looked into by Medical, however, at this time your inmate information states lower level/lower bunk, which is your housing assignment. There is nothing stating you cannot climb stairs. You climb stairs to go to visitation as well as go on breaks. Should Medical determine your status needs to be changed we will do so. . . . .

*Id.* at 7. In the grievance appeal attached to Jackson's Complaint, Jackson wrote:

> Ignoring my medical restriction of LLLB staff bend the rules by letting me and other LLLB inmates go up the stairs to visit to make their job easier. In general they say "we'll just walk you up to your visitation." On 9-14-2015 @ approx. 7:30 p.m. I tried to tell the deputy I was LLLB and he said there was nothing indicating that and said quote "Either go up top or back in your room." Then he gave me a direct order to go to the upper back subday!

*Id.* The appeal response concurred with the grievance officer. *Id.*

15. Jackson alleges that after his fall, he received visitors in the intake area of the PCRDF so he would not have to go upstairs. Doc. No. 11 at 3.

16. Prior to September 14, 2015, Jackson received visitors in visitation booths in U, Q, H, and G, Units. Doc. No. 46-1 at 3 (Ballard Affidavit) & 43-47 (Jackson 2015 PCRDF Visitation Records). Jackson acknowledges he went upstairs on several occasions before his fall on September 14, 2015. Doc. No. 11 at 2; Doc. No. 43 at 1.

17. According to Ballard, Jackson received visitors in upstairs visitation booths on several occasions after September 15, 2015. Doc. No. 46-1 at 3 (Ballard Affidavit) & 43-47 (Jackson 2015 PCRDF Visitation Records). Jackson disputes that he ever received visitors upstairs after his fall. Doc. No. 57. Jackson submitted affidavits from two of his visitors, Linda and

5

Chiquina Henson, who state that after Jackson's fall on September 14, 2015, they visited Jackson in the intake area of the PCRDF on six occasions. Doc. Nos. 63 & 64.

### IV. Analysis

**A.  Official Capacity Claims**

Defendants argue that Jackson fails to state an official capacity claim. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against the defendants in their official capacities is in essence a suit against the county itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, as county employees, the defendants can be held liable in their official capacities in this case only if Jackson can establish that a constitutional violation was committed pursuant to "(1) an 'official municipal policy,' . . . (2) an unofficial 'custom,' . . . ; or (3) a deliberately indifferent failure to train or supervise . . . ." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016) (internal citations omitted).

In his complaint, Jackson does not assert that a custom or policy of Pulaski County was the moving force behind the claimed violations of his constitutional rights. Doc. No. 2 at 4. Jackson filed a response to the Defendants' Answer in which he claimed that "defendant Charles 'Doc' Holladay failed to properly train Officer (Deputy) C. Gipson who was employed by Sheriff Charles 'Doc' Holladay . . .". Doc. No. 11 at 2. Accordingly, the only official capacity claim possibly stated by Jackson is based on a theory that Holladay failed to adequately train or supervise Gipson.

"The inadequacy of police hiring, training, or supervising may serve as the basis for § 1983 liability only where the failure amounts to deliberate indifference to the rights of persons with

whom the police come into contact." *Glasper v. City of Hughes, Arkansas*, 269 F. Supp. 3d 875, 901 (E.D. Ark. 2017) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). Claims based on deficient hiring or failure to train and supervise employees require proof that:

> (1) the [municipality]'s practices were inadequate; (2) the [municipality] was deliberately indifferent to the rights of others in adopting them, such that the failure to hire, train, or supervise reflects a deliberate or conscious choice by the [municipality]; and (3) an alleged deficiency in the hiring, training, or supervising procedures actually caused the plaintiff's injury.

*Id.* (citing *B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012)). "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness." *Id.* Further, a plaintiff raising an inadequate training/supervision claim must show that the municipality "had notice that its procedures were inadequate and were likely to result in a violation of constitutional rights." *Id.* at 901-902 (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). *See also Parrish v. Ball,* 594 F.3d 993, 1002 (8th Cir. 2010) (plaintiff asserting failure to supervise and train staff must show that supervisor "1) Received notice of a pattern of unconstitutional acts committed by subordinates; 2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) Failed to take sufficient remedial action; and 4) That such failure proximately caused injury to [Plaintiff].").

Jackson does not provide evidence of alleged lack of training or supervision to support an official capacity claim against Holladay. Jackson does not establish that Holladay had notice of a pattern of unconstitutional acts committed by subordinates related to the claims he asserts. He provides no evidence of any pattern of unconstitutional activity. He does not describe what training or supervision was lacking or how any lack of training or supervision caused his injuries. He does not allege that Holladay was aware of any such lack of training or supervision and failed to take remedial action. In sum, Jackson provides no evidence to prove his bald assertion that

Holladay failed to train Gipson. Accordingly, the Defendants are entitled to summary judgment on Jackson's official capacity claims, and those claims should be dismissed.

### B. Qualified Immunity – Individual Capacity Claims

Defendants argue they are entitled to qualified immunity with respect to Jackson's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Jackson sues Defendants for violating his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment places a duty on prison officials to provide humane conditions of confinement. *Weaver v. Clarke,* 45 F.3d 1253, 1255 (8th Cir.1995) (citing *Farmer v. Brennan,* 511 U.S. 825, (1994)). "[A] prison official violates the Eighth Amendment by being deliberately indifferent *either* to a prisoner's *existing* serious medical needs *or* to conditions posing a substantial risk of serious *future* harm. *Id.* (citing *Estelle v. Gamble,* 429 U.S. 97 (1976) (existing medical needs), and *Helling v. McKinney,* 509 U.S. 25, 35 (1993) (risk of

future harm to health)). To succeed with a deliberate indifference claim arising from the failure to address an inmate's serious medical needs, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed with a deliberate indifference claim based on conditions posing a substantial risk of serious harm, the plaintiff must show that: (1) the condition was serious enough to deprive him of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and (2) officials were deliberately indifferent to the inmate's health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

*Defendant Holladay*. As already explained, Jackson's only allegation against Holladay is that he failed to train Gipson, and that claim fails because he has no evidence to support it. Further, to the extent Jackson seeks to hold Holladay accountable for Gipson's actions because he was in a supervisory position over Gipson, Jackson's claim fails. The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To state a cognizable claim against a defendant in a supervisory role, an inmate must allege that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action. *See, e.g., Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). *See also Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.") (internal quotations and citations omitted). Because Jackson does not allege or provide evidence that Holladay directed him to go

upstairs or otherwise knew that Jackson should not go upstairs for breaks or visitation and was required to anyway, Jackson's claim against Holladay fails, and Holladay should be awarded summary judgment on Jackson's individual capacity claims.

*Defendant Gipson.* With respect to defendant Gipson, the Court finds that whether or not Gipson ordered Jackson to go upstairs or gave him the option of staying in his cell[3] is not material based on evidence that PCRDF policy does not equate a lower level/lower bunk housing restriction with a restriction on going upstairs for other reasons. According to Ballard, an inmate with mobility issues may receive a lower level/lower bunk housing restriction. Doc. No. 46-1 at 2. PCRDF's policy regarding the accommodation of disabled inmates (Branch Directive D10-0040) provides that "[a]n inmate with mobility impairment or with other special needs should have priority for placement in a cell equipped for handicapped persons." *Id.* at 16. Ballard further explains that if medical personnel issue a medical communication form stating that an inmate cannot go upstairs due to a mobility impairment, officials will arrange an alternate accessible visitation area.[4] *Id.* at 2. The visitation restriction is provided for in a different section of the PCRDF policy regarding disabled inmates. It provides: "[i]f an inmate cannot access visitation areas due to mobility impairment, an alternate accessible visitation area will be arranged and should be designed to afford reasonable conditions for visitation." *Id.* at 17. Ballard's interpretation of the PCRDF policy is supported by the response to the grievance filed by Jackson. There, the grievance officer informed Jackson that he had a lower level/lower bunk restriction but no restriction on going upstairs, that he went upstairs for visitation and breaks, and that medical

---

[3] Defendants do not offer any testimony or other evidence with respect to whether or not Gipson ordered Jackson to go upstairs. Instead, they rely on Jackson's statement in his grievance that he was given an option but then ordered to go upstairs. *See* Doc. No. The Court finds that the grievance supports Jackson's contention that he was ultimately ordered to go upstairs; therefore, this fact remains in dispute.

[4] It is not clear how PCRDF policy accommodates disabled inmates for their recreational breaks.

10

would have to change his status.  Doc. No. 2 at 7.  It is undisputed that there was no medical restriction in place which specifically limited Jackson's use of stairs at the time of the fall, nor is there any evidence that Jackson requested such a restriction before the fall.

Jackson has offered no evidence to support his contention that his lower level/lower bunk housing restriction meant he could not use stairs.  *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").  In fact, he acknowledges that while he had a lower bunk/lower level restriction, he went upstairs for visitation before his fall.  *See* Doc. No. 11 at 2; Doc. No. 43 at 1.  Jackson presented no evidence that he requested the additional restriction against using stairs at any time.  It appears this may be because he misunderstood the PCRDF policy and believed that his lower level/lower bunk restriction meant he should not be required to go upstairs for other reasons.  However, Jackson's possible misunderstanding of jail policy is not proof that Gipson was deliberately indifferent to Jackson's serious medical needs.  Assuming Jackson had a serious medical condition that prevented him from using stairs, there is no evidence that Gipson was aware of that limitation and deliberately disregarded it.  Instead, the evidence shows that before his September of 2015 fall, Jackson had a housing restriction but no restriction against using stairs for visitation or other reasons.  Because Jackson has offered no proof that Gipson was deliberately indifferent to his serious medical needs, Gipson should be awarded summary judgment on Jackson's individual capacity claims.

## IV.  Conclusion

For the reasons described herein, the undersigned recommends that that Defendants' motion for summary judgment (Doc. No. 45) be granted.  Jackson fails to state official capacity claims, and Defendants are entitled to qualified immunity on Jackson's individual capacity Eighth Amendment claims.  Jackson's claims against Defendants should be dismissed with prejudice.

DATED this 3rd day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE